## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ROGER ANDERSON,**

       **Plaintiff,**

         **v.**

**ABF FREIGHT SYSTEM, INC.,**
***et al.,***

       **Defendants.**

**Case No. 1:23-cv-278**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

One must take care what he commits to writing. According to Plaintiff Roger Anderson, his supervisor Defendant David Stein defamed Anderson when Stein sent a letter to Anderson's union representative falsely implying that Anderson had engaged in violent behavior at the workplace. Alleging that those assertions resulted in his removal from a coveted position representing his employer, Defendant ABF Freight System, Inc. (ABF), at driving competitions, Anderson sued Stein and ABF for defamation. (Compl., Doc. 3). He sued in Ohio state court. But ABF removed to this Court. (Notice of Removal, Doc. 1).

Presently, the Court must untangle four pending motions. First, Defendants ABF and Stein have each moved for judgment on the pleadings. (Docs. 9, 25). Second, Anderson has moved to remand this case to state court. (Doc. 10). And third, Anderson has moved for an extension of time to serve Stein. (Doc. 17).

For the reasons stated more fully below, the Court **DENIES** Anderson's Motion to Remand (Doc. 10). The Court **DENIES AS MOOT** Anderson's Motion to Extend

Time for Service (Doc. 17). And the Court **GRANTS** Defendants' Motions for Judgment on the Pleadings (Docs. 9, 25). Accordingly, the Court **DISMISSES** Anderson's action **WITHOUT PREJUDICE**.

## BACKGROUND[1]

For over a decade, Anderson has been a driver and dockworker at ABF. (Doc. 3 ¶ 4, #266). Based on his work, Anderson received the opportunity to represent ABF at driving competitions as part of its "Load Team." (*Id.* at #266–67). Anderson's problems began on June 3, 2022, when he made an inadvisable comment about his manager (Stein) to a co-worker during an allegedly "private conversation on personal time."[2] (*Id.* ¶ 6, #267). The co-worker reported Anderson's comment to Stein, which initially led to Anderson's immediate termination and removal from the company's seniority list, as well as the company notifying other employees of the termination. (*Id.* ¶¶ 6–7, #267). Anderson's union obtained his reinstatement "effective June 8, 2022," so long as he attended sensitivity training. (*Id.* ¶ 8, #267). The same day Anderson was to be reinstated, Stein sent the allegedly defamatory letter that is the basis for this lawsuit to Anderson and copied Anderson's union representative. (*Id.* ¶¶ 8–9, #267). In this letter, Stein made several allegedly false and defamatory statements. Stein purportedly asserted that Anderson "contribut[ed] to a hostile work

---

[1] As this matter comes before the Court on Defendants' motion for judgment on the pleadings, the Court must accept the allegations in the Complaint as true. *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

[2] ABF suggests that Anderson's comment involved the use of "the N word." (ABF Answer, Doc. 6 ¶ 7, #453).

environment[,] … needed to attend remedial training on Violence in the Workplace[,] … [and] attended a phone hearing on June 6, 2022."[3] (*Id.* ¶ 9, #267). According to Anderson's Complaint, these statements were deceptive or outright false: the letter purportedly "created the false impression that [Anderson] had engaged in violent behavior" that did not occur, and Anderson alleges he never attended the hearing that was referenced. (*Id.*). Anderson allegedly informed Stein of the errors in the letter, but no correction ensued. (*Id.* ¶ 10, #267). Five days later, Anderson was removed from the coveted Load Team by Mark Hampton, an ABF

---

[3] The Complaint provides no details about what transpired at that phone hearing. But the document ABF docketed purporting to be the letter referenced in the Complaint makes clear that the hearing centered on the inappropriate comment Anderson made on June 3, 2022, and the corresponding sanction imposed for his behavior. (Doc. 8, #530). While this letter was not attached to the Complaint itself, it was filed by ABF in connection with its answer. (Doc. 6 ¶ 9, #454). The general rule at this stage of the litigation is for the Court to confine its review to the materials in the pleadings. *CFPB v. Fifth Third Bank, N.A.*, No. 1:21-cv-262, 2023 WL 7325956, at *3 (S.D. Ohio Sept. 26, 2023). But the Court may review any written instruments attached as exhibits to the pleadings, Fed. R. Civ. P. 10(c), which include those documents incorporated by reference in the complaint or answer because they are "referred to in the pleadings and [are] integral to the claims." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *Fifth Third*, 2023 WL 7325956, at *3 ("A written instrument is a record falling within a narrowly defined class of legally significant documents 'on which a party's action or defense is based.'" (quoting *Copeland v. Aerisyn, LLC*, No. 1:10-cv-78, 2011 WL 2181497, at *1 (E.D. Tenn. June 3, 2011))). Anderson does not dispute the authenticity of the letter ABF filed with its answer—in fact, he relies on it in his briefing. (Doc. 30, #678; *see* Doc. 7, #526). And the letter is printed on ABF letterhead, is dated, and is signed by both Stein (as the letter's author) and Anderson (as acknowledgment of his receipt). (Doc. 8, #530). Moreover, its contents track Anderson's allegations about the topics the letter covered. (*Compare id. with* Doc. 3 ¶ 9, #267). As a result, the Court is satisfied that the letter docketed by ABF is the letter reasonably specified in the Complaint as the alleged actionable defamation at the heart of this suit. So unlike times when unsigned, undated filings not referenced in the complaint or meaningfully incorporated in the answer are deemed to be outside the pleadings, *Fifth Third*, 2023 WL 7325956, at *4–*5, the Court concludes it may take judicial notice of Stein's letter and its contents as the letter "is referred to in the pleadings and is integral to [Anderson's defamation] claim[]." *Com. Money Ctr.*, 508 F.3d at 335–36. Put simply, because Anderson claims Stein's publishing his letter constituted the actionable defamation for which Anderson claims Defendants are liable, he has put Stein's letter and its content at the center of this dispute; it would therefore defy logic for the Court to ignore the letter itself when considering the other allegations.

employee with apparent supervisory authority over the Load Team. (*See id.* ¶ 11, #267–68). Hampton allegedly informed Anderson that the decision to remove him was because Stein's letter evinced Anderson's "lack of integrity."[4] (*Id.*).

On March 13, 2023, based on this harm to Anderson's "reputation" in "his occupation and profession," Anderson sued Stein for defamation in state court. (*Id.* ¶¶ 12–13, 15–16, #268). Anderson also sued ABF claiming that ABF was liable either as Stein's employer under the doctrine of respondeat superior or because it ratified Stein's actions. (*Id.* ¶ 14, #268). Anderson demanded a retraction and correction of the letter, reinstatement to the Load Team, and compensatory and punitive damages, as well as fees and costs. (*Id.* ¶ 17, #268–69).

On April 14, 2023, Anderson effected service on ABF, but not Stein—more on that in a bit. (Doc. 1-3, #16). On May 11, 2023, within the 30 days that 28 U.S.C. § 1446(b) allows, ABF filed a notice removing the cause to this Court. (Doc. 1). In the notice, ABF cited both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under § 1332 as the bases for its authority to remove the state action. (*Id.* at #1, 6, 8). As to the former, ABF contended that Stein's state-law claim

---

[4] The Court notes that the allegations create some ambiguity. Anderson first alleges the letter was sent only to Anderson and his union representative. (Doc. 3 ¶ 9, #268). But in the next paragraph, Anderson alleges it was sent to the "union *and others.*" (*Id.* ¶ 10, #268 (emphasis added)). Who are these others? Other union members? Anderson's family members? Random members of the public? Admittedly, one could reasonably infer that Anderson intended to allege that Defendants published the letters to Hampton, given that Hampton supposedly cited the letter to justify his decision to remove Anderson from the Load Team. (*See id.* ¶ 11, #267–68). *Coley*, 799 F.3d at 537 (requiring a court construing the complaint at the motion-to-dismiss stage to draw all "reasonable inferences" in favor of the plaintiff). But beyond construing the Complaint to include Hampton as one of the recipients of Stein's letter, the Court can discern no other recipient of the letter from the other purely conclusory allegations that merely constitute a "formulaic recitation of the [publication] element[]" of his defamation claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

was completely preempted by the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 141, *et seq.*, and therefore removable because the Court would need to interpret or to afford remedies dictated by the applicable collective bargaining agreement (CBA). (*Id.* at #2–5). As for diversity, ABF contended that the amount in controversy was more than $75,000, and that there was complete diversity between Anderson, an Ohio citizen, and the only served defendant, ABF, an Arkansas corporation with its principal place of business in Arkansas. (*Id.* at #6–7). That is to say, in ABF's view as stated in its notice of removal, Stein's Ohio citizenship did not defeat complete diversity because he had not been served and joined to the suit. (*Id.* at #7).

After removing, ABF answered. (Doc. 6). In its answer, ABF reserved several affirmative defenses, all largely related to ABF's belief that the letter could not constitute actionable defamation because it was key, under the CBA, to resolving the disciplinary matter sparked by Anderson's inappropriate comment. (*Id.* at #455–57). ABF then moved for judgment on the pleadings arguing that (1) the defamation claim must be dismissed as preempted by the LMRA and (2) the communications at the heart of Anderson's Complaint also constituted non-actionable privileged communication. (Doc. 9, #531).

On the heels of ABF's motion, Anderson moved to remand arguing that this Court lacked subject matter jurisdiction because his Complaint raised a purely state-law matter and because complete diversity was lacking. (Doc. 10, #548–49). ABF opposed, (Doc. 12), and Anderson replied, (Doc. 15). Because he had moved to remand,

5

Anderson also moved to stay the proceedings pending the Court's resolution of his motion to remand, rather than taking the more prudent route of filing a timely response to ABF's motion for judgment on the pleadings. (Doc. 13). ABF opposed the stay, (Doc. 14), and Anderson replied in support of it, (Doc. 16).

With those motions pending, Anderson moved on August 8, 2023, for an extension of time to serve Stein—who to this day, as best the Court can tell from the docket, has yet to be served. (Doc. 17). Anderson claims that he had been diligent in trying to serve Stein, that any initial delay was due to his concern that executing service on Stein would waive his objection to removal, and that further delay was caused by ABF's failure to help Anderson serve Stein. (*Id.* at #618–19). Based on these arguments, Anderson requested a 90-day extension of the time limits to serve as stated in Federal Rule of Civil Procedure 4(m). (*Id.* at #619). In a third round of briefing, ABF opposed, (Doc. 22), and Anderson replied, (Doc. 23).

Then, in an unexpected turn of events, on September 20, 2023, Stein—who had been noticeably (and understandably, given he was not served) absent from the case up until that point—voluntarily arrived on the scene. Specifically, ABF's counsel entered an appearance on Stein's behalf. (Doc. 24). And once before the Court, Stein also moved for judgment on the pleadings. (Doc. 25). In that filing, Stein incorporated all the reasons stated in ABF's companion motion for judgment on the pleadings. (*Id.* at #653). Stein also filed an answer that largely tracks ABF's answer. (Doc. 26). The differences between Defendants' answers largely fall into two camps: (1) Stein's denial of allegations about which he lacks competence, but about which ABF would

6

be aware, (*e.g.*, *compare* Doc. 6 ¶¶ 8–9, #453–54 (ABF's admissions regarding negotiations with Anderson's union about his reinstatement and its awareness of the lack of internal complaints lodged against Anderson for violence), *with* Doc. 26 ¶¶ 8–9, #657 (Stein's denial of allegations regarding those details)), and (2) Stein's reservation of affirmative defenses personal to him, (Doc. 26, #660 (purporting to reserve the defense that Anderson failed properly to serve him in accordance with Federal Rule of Civil Procedure 4(m))).

Again, rather than respond to Stein's motion for judgment on the pleadings on the merits as parties are wont to do, Anderson filed a nominally labelled "Response in Opposition" on October 11, 2023, in which he again argued that his motion to stay should be granted inclusive of a stay of any "proceedings on Stein's motion for judgment on the pleadings." (Doc. 27, #663). Two days later, the Court denied Anderson's motion to stay and ordered him to respond to the pending motions for judgment on the pleadings, which he had twice declined to do. (10/13/23 Not. Order). As ordered, Anderson finally responded to both pending motions for judgment on the pleadings, (Doc. 30), and Defendants jointly replied, (Doc. 31).

The four pending motions are ripe for the Court's review.

## LAW AND ANALYSIS

Although ABF's motion for judgment on the pleadings was filed first, the Court will not analyze it first. This is because Anderson's motion to remand is a challenge to this Court's subject matter jurisdiction, which jurisdiction is a prerequisite for the Court to take any other action in this cause. *Hahn v. Rauch*, 602 F. Supp. 2d 895, 902

(N.D. Ohio 2008). After the Court tackles the motion to remand, it will then turn to Anderson's motion for an extension of time to serve Stein. This is the logical next step because whether Stein is properly served could impact (spoiler alert: here, it does not) whether he is a party to this suit. The Court will then review the two pending motions for judgment on the pleadings, which are identical in form and thus will be analyzed together.

## A.    Motion to Remand

A motion to remand challenges the Court's subject matter jurisdiction over the dispute removed from state court. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Because the defendant as the removing party is seeking to invoke the district court's subject matter jurisdiction, he bears the burden of proving that such jurisdiction exists in response to a motion for remand. *Id.* The Court's determination of its jurisdiction over the removed action is limited to the legal bases asserted by the removing defendant in his timely filed notice of removal. *Miller v. Adamo Grp.*, 1:22-cv-14, 2022 WL 1013090, at *3 (S.D. Ohio Apr. 5, 2022); 28 U.S.C. § 1446(a) (The removing party must file "a notice of removal … containing a short and plain statement of the grounds for removal."). To evaluate these grounds for removal, a district court is not limited to the factual allegations in the complaint and enjoys wide discretion in the evidence it may review to assess its subject matter jurisdiction. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 n.11 (6th Cir. 2010). But despite that latitude, "removal jurisdiction is assessed based on the facts as they existed at the

time of removal." *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, 606 F. Supp. 3d 743, 747 (S.D. Ohio 2022).

ABF cited two bases for removing this cause: (1) federal question jurisdiction based on the complete preemption of Anderson's defamation claim by the LMRA, and (2) diversity jurisdiction. (Doc. 1, #2, 6). As explained further below, the Court finds that the federal question jurisdiction is sufficient, and thus does not address whether diversity jurisdiction exists.

ABF's specific theory of removal on the basis of a federal question is something of a unicorn in federal law. The general rule is that the federal question supporting removal must be apparent from the face of the complaint—the well-pleaded complaint rule. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). And under that rule, a defendant's affirmative defense—even if purely federal—does not permit removal because it is not a part of the well-pleaded complaint. *Id.* So, for example, a defense that federal law preempts a state law claim typically will not support removal. But not so fast. The Supreme Court has carved a special exception into the well-pleaded complaint rule that it has labeled complete preemption. *Id.* at 63–64. According to the Supreme Court, certain federal statutes have a singular and substantial preemptive sweep that is so "extraordinary" that their application to state law "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65.

One unicorn that fits the complete preemption bill is preemption under § 301 of the LMRA, 29 U.S.C. § 185. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). And the touchstone for evaluating if complete preemption attains under § 301 in a given case is whether the Court needs to "constru[e the] collective-bargaining agreements" when resolving the state-law claim in question. *Id.* at 216 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988)). The Sixth Circuit has established a two-step approach for analyzing such arguments: (1) does "proof of the state law claim require[] interpretation of the collective bargaining agreement terms"? *Id.* And, if not, (2) is "the right claimed by the plaintiff [] created by the collective bargaining agreement or by state law"? *Id.* If the Court answers yes to either question, removal is proper under the complete preemption theory. *Id.*; *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 522 (6th Cir. 2012) (explaining that this test ensures "the essence of plaintiff's claim implicates a dispute that is 'inextricably intertwined' with interpretation of CBA terms"). The basic idea is that such claims, even if nominally set forth in state common law terms (e.g., defamation), are in fact contract claims under the CBA. And that makes them federal law claims because CBA contract claims are federal claims under § 301 of the LMRA.

So what does that mean for the Complaint here? On first blush, the Complaint itself does not seem to require any discussion of the CBA—in fact, the Complaint does not even mention the CBA between ABF and Anderson's union. (*See* Doc. 3). But that is not dispositive. A plaintiff cannot use artful pleading "to disguise what is essentially a contract claim as a tort." *DeCoe*, 32 F.3d at 216. Rather, it is "the essence

of the plaintiff's claim" that matters. *Id*. If, correctly understood, the plaintiff's claim sounds in the CBA, then removal is appropriate—the claim is legally treated as one for breach of contract (here, the CBA), even if the claim is dressed up as a state common law tort in the Complaint.

Taking the next logical step and reviewing the allegedly defamatory instrument itself—Stein's letter—explains why this case is properly in federal court. Stein's letter, which the Court can consider in deciding the motion to remand regardless whether it is attached to the pleadings, *Bennett*, 607 F.3d at 1087 n.11, discusses the agreement among all parties (including Anderson's union representative) as to the proper sanction for disciplining Anderson. That, in turn, ties the allegedly false statements cited in Anderson's Complaint to the grievance process the CBA sets up between the union and ABF. (Doc. 8, #530). And, most importantly, Stein's letter expressly cites the CBA itself as creating the permission to draft and to "issue[]" the letter. (*Id.* (noting that the letter was drafted "[i]n accordance with Article 46" of the CBA and local supplement (Docs. 6-2, 6-3))). Based solely on reviewing the letter's plain text, the allegedly actionable defamation itself places the CBA's provisions at issue. Put another way, Stein asserted that the CBA authorizes the letter and its contents in connection with Anderson's discipline for his improper work conduct, thereby essentially creating a privilege for the communication. And that is a potentially viable defense to liability for the contents of that letter. *See Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 262–63 (Ohio Ct. App. 1993) (extending absolute privilege to employers accused of defamation based on statements made in

connection with and authorized by the collective bargaining agreement's grievance process); *Blesedell v. Chillicothe Tel. Co.*, No. 2:13-cv-451, 2015 WL 1968870, at *24 (S.D. Ohio May 1, 2015) (collecting Ohio caselaw that extends qualified privilege, a defense to the actual malice element of defamation, to statements made in connection with a collective bargaining agreement's grievance process).

Importantly, the key for current purposes is not whether Defendants will *win* on the defense. Rather, the point here is that resolving that issue of privilege calls for the Court to assess whether *the CBA* authorized Stein to issue the letter as he did. *See Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037–38 (6th Cir. 1989) (holding that a state-law fraud and misrepresentation claim pleaded to avoid a discussion of § 301 was completely preempted by § 301 because whether the employer adhered to the terms of a collective bargaining agreement governing the number of medical examinations a union employee could request to clear him for reinstatement to work was integral to assessing whether the employer engaged in fraud when it purportedly withheld a physician's medical report detailing his examination of the plaintiff in the course of denying her request for reinstatement). And whether the CBA authorized the letter is a contract interpretation issue that falls under § 301 of the LMRA. So, in a sense, Anderson's *real* claim is for breach of contract—by alleging Stein included defamatory statements in the letter, Anderson essentially claims Stein incorrectly invoked the CBA as authorization for what he wrote and instead violated the CBA's terms. By necessity, the Court's review of that claim will turn on the CBA's terms.

A quick look at the relief Anderson seeks provides a separate basis confirming that removal is appropriate. Anderson wants reinstatement to the "Load Team." (Doc. 3, ¶ 17a, #268). He can't get that relief under Ohio law, as it is well-settled that specific performance under an employment contract is generally unavailable as a remedy for Ohio common law claims. That result follows from the public policy in Ohio that employment is at will.[5] *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 270 (6th Cir. 2007) (citing *Felch v. Findlay Coll.*, 200 N.E.2d 353, 354–56 (Ohio Ct. App. 1963)). So the only way in which Anderson can claim entitlement to this form of relief on the facts here is if the CBA gives him some right to it (step two of the complete preemption analysis cited above). *Id.* And whether reinstatement is available under the CBA again requires the Court to construe the CBA's terms— another contract issue covered by § 301 (step one of the complete preemption analysis). *Id.* For this reason, despite whatever *other* remedies Anderson may request, Anderson's demand for reinstatement means his state-law defamation claim

---

[5] There are, of course, narrow exceptions that may (not must) result in an award of specific performance under a personal services contract: (1) when "a statute entitl[es] a former employee to reinstatement," *Townsend v. Antioch Univ.*, 2009-Ohio-2552, ¶ 19 (2d Dist.), and (2) "where services have a unique and peculiar value." *Holstein v. Crescent Cmtys. Inc.*, 2003-Ohio-4760, ¶ 14 (10th Dist.). Neither applies. To begin with, Anderson rests his hat solely on Ohio common law—citing no statute that would entitle him to reinstatement. (Doc. 15, #604–05). And, given Anderson demands to be added back to the Load *Team*, the unique and peculiar exception is inapplicable—that the position is nested within a team of ABF employees necessarily means Anderson's work on the Load Team is not unique or of a peculiar value because ABF necessarily hires multiple individuals to represent the company at driving competitions. *Felch v. Findlay Coll.*, 200 N.E.2d 353, 354–55 (Ohio Ct. App. 1963) (denying specific performance to a former professor requesting to be added back to the faculty of his former employer and noting specially that "although his services might once have had a unique and peculiar value[,] they no longer have any value as far as the defendant is concerned"). Moreover, the unique and peculiar value exception applies only to requests that the Court compel a derelict *employee* to perform under his contract, not to compel the employer to accept said employee. *Id.* at 355.

is inextricably intertwined with (essentially arises under) the CBA, such that complete preemption applies and removal was proper. *Id.* ("[T]his single request [for reinstatement] is enough to support preemption [of plaintiff's Ohio law claims], as it would require interpretation of the terms of the CBA, and implicates a right created under the CBA.").

Anderson disputes both conclusions. He challenges ABF's reliance on privilege as the basis for § 301 preemption in two primary ways: (1) he argues that privilege (whether absolute or qualified) is an affirmative defense, not a prima facie element of defamation, which renders § 301 preemption inapplicable; and (2) he contends that Article 46, the CBA provision that Stein invoked for authorization to issue his letter, did not permit Stein to circulate the letter as he did. (Doc. 10, #553–56; Doc. 15, #598–99). As for ABF's alternative argument that the request for reinstatement implicates a right created by the CBA, Anderson claims that (1) there is a legally significant difference between "reinstatement to [a particular position and] ... reinstatement to employment," (Doc. 10, #558), (2) ABF cannot use his request for reinstatement to support the removal of this cause because ABF has cited no provision of the CBA that governs the Load Team, (Doc. 15, #604), and (3) specific performance is available without reference to the CBA because Ohio law allows for equitable remedies for defamation, (*Id.* at #605). Take them each in turn.

Yes, Anderson is correct that under Ohio law, privilege is an affirmative defense, not an element of the defamation claim. *Fisher v. Ahmed*, 153 N.E.3d 612, 624–25 (Ohio Ct. App. 2020). But that is not the point. *Klepsky*, 489 F.3d at 269

14

(explaining that when a state-law claim necessarily requires interpretation of a collective bargaining agreement, complete preemption under § 301 of the LMRA constitutes "[a]n exception to th[e] rule" that an anticipated federal-law defense "is generally not enough to justify removal to federal court"). The question is whether resolving the privilege claim, which is necessarily raised by Anderson's claim because privilege is invoked by the letter itself, will require the Court to interpret the CBA. And it will. Whether Stein's letter was privileged turns on whether an employer's statements have a nexus to an employment grievance or disciplinary procedure. *Ratkosky v. CSX Transp., Inc.*, 2009-Ohio-5690, ¶¶ 56–58 (8th Dist.) (holding that a statement made in connection with a grievance procedure under a collective bargaining agreement was absolutely privileged, which in turn meant the defamation claim was preempted by the Railway Labor Act). In short, Stein's letter—the heart and essence of Anderson's defamation claim—puts specific CBA terms and whether they authorized (and thereby privileged) what Stein published at issue.[6] *DeCoe*, 32

---

[6] The parties dispute whether Defendants would be entitled to qualified or absolute privilege under Ohio law, (*compare* Doc. 12, #575, *with* Doc. 15, #600–01)—the former of which can be overcome by proof of actual malice, *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 467 (Ohio Ct. App. 2016). That issue is orthogonal to whether Anderson's defamation claim requires the Court to interpret the CBA. As another court cogently stated,

> Plaintiff cannot allege actual malice as a substitute for alleging that defendants' statements were unprivileged; rather, plaintiff can allege actual malice only if necessary to overcome the defendants' qualified privilege. Put another way, if this court considered plaintiff's claim for defamation, the issue of actual malice would not arise unless defendants possessed a qualified privileged [sic], and defendants could not be shown to possess a qualified privilege without this court's interpretation of the contract. Consequently, plaintiff's allegation of malice cannot help him state a claim for defamation. …

F.3d at 217 (Given the relevant collective bargaining agreement set forth grievance procedures to handle alleged violations of the employer's sexual harassment policy, "it is difficult to understand how the plaintiff could establish that the challenged publications [made in connection with the CBA's grievance procedures] were unprivileged … without interpreting the CBA provisions that identified the duties imposed on all defendants."). And this point reinforces why Anderson's contention that his defamation claim is not inextricably intertwined with the CBA because he could prove the other elements of his defamation claim without reference to the CBA lacks merit. (Doc. 10, #555). Given the letter's terms directly seek safe harbor under the CBA, the letter itself ensures that whether the CBA, as properly interpreted, privileged Stein's publication of the letter will be front and center in the Court's resolution of Anderson's claim. Interpreting the CBA is thus inextricably intertwined with Anderson's defamation claim.

Anderson's next argument similarly struggles. He argues that Article 46—the CBA provision Stein cited in his letter and on which ABF relies—does not cover, and therefore would not privilege, what Stein did here: detailing why Anderson was

---

In this case, it is impossible to determine whether publication was privileged without evaluating the rights and responsibilities of … defendants under the terms of the [collective bargaining agreement].

…

Because plaintiff cannot establish the elements of his defamation claim without interpreting the [collective bargaining agreement], his claim is preempted [by § 301 of the LMRA] and [therefore] must be dismissed.

*Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 856–57 (N.D. Ohio 2003). Just the same here. The terms of Stein's letter put the CBA and the accompanying privilege (whether absolute or qualified) under Ohio law front and center in the dispute. Consequently, regardless what privilege Defendants merit, Anderson's defamation claim is preempted.

disciplined and what sanction was imposed and publishing the letter to a purported supervisor, Mark Hampton. (Doc. 15, #598–99). But Anderson's attempt to challenge ABF's interpretation of Article 46 gives away the game. This is not a case in which the employer attempts to justify removal by citing tangentially related provisions of the relevant collective bargaining agreement and by making broad conclusory assertions about why the agreement is implicated by plaintiff's claims. *See Hahn*, 602 F. Supp. 2d at 906–07 (rejecting reliance on a union constitution provision governing the appointment of union trustees and requiring a trusteeship hearing to be set after such appointment, because those provisions did not relate to what local unions may or may not say at such hearings or publish to their members). Nor is this a scenario in which the employer published allegedly defamatory content to the public and belatedly attempted to seek protection under the relevant bargaining agreement. *See Cooks v. UAW Loc. 699*, No. 21-12640, 2022 WL 4534953, at *4 (E.D. Mich. Sept. 28, 2022) (finding § 301 inapplicable because defendant had allegedly circulated a defamatory letter online to the public). Rather, Article 46, by its express terms, governs ABF's provision of notice to Anderson and the union regarding his suspension, (Doc. 6-3, #515)—as evidenced by Stein's express reference to this provision in connection with his publication of the letter, (Doc. 8, #530). And while the parties cannot agree whether Article 46 permitted the form of the notice and how Stein disseminated the letter, their dispute necessarily calls for the Court to adjudicate which interpretation of the CBA is correct. *DeCoe*, 32 F.3d at 216 ("[T]he plaintiff in essence is claiming that the defendants exceeded the scope of CBA-

imposed rights and duties, in their attempts to" resolve grievances lodged against the plaintiff, which requires him to "make substantial reference to the CBA in order to establish an essential element of his claim.").

Similarly, whether Hampton was a proper recipient of Stein's letter depends on whether ABF followed the proper procedures in handling employee discipline as outlined by the CBA. That means Anderson's assertion that Hampton should not have received Stein's letter is an argument about "the scope of the[] privilege" based on his interpretation of the CBA, which again simply puts the question whether Anderson's favored reading, or the reading proposed by Defendants, properly construes the CBA—the quintessential question raised in a § 301 case. *DeCoe*, 32 F.3d at 217. The parties' contract interpretation dispute is the hallmark of a § 301 claim that was properly removed to federal court. *Klepsky*, 489 F.3d at 269–70.

So Anderson's challenges to ABF's removal of this dispute based on the privilege Defendants may merit under Ohio law for publishing an allegedly defamatory letter with a nexus to the CBA's disciplinary procedures fail to persuade.

But even setting aside the issue of privilege, Anderson cannot overcome complete preemption because, as explained above, his request for reinstatement petitions the Court to enforce a right *created by* the CBA, not one "established by an external regime of state law." *Paul*, 701 F.3d at 521. His remaining arguments disputing this conclusion try to slice the salami too thinly. His first contention—that seeking reinstatement to a particular position is meaningfully distinct from requesting specific performance—is patently meritless. (Doc. 10, #558).

18

Reinstatement to a privileged position in a business, like a promotion, is a demand for specific performance. *Hishon v. King & Spalding*, 467 U.S. 69, 72 (1984); *Croy v. Cobe Lab'ys., Inc.*, 132 F. App'x 229, 230 (10th Cir. 2005); *accord Franz v. Five Rivers MetroParks*, 254 F. Supp. 2d 753, 754 (S.D. Ohio 2002). Therefore, the above analysis finding specific performance inapplicable as a remedy under Ohio common law, given the state's public policy embracing at-will employment, necessarily applies with full force here. *Gilson v. Eliza Bryant Vill.*, No. 1:13-cv-1504, 2013 WL 5158695, at *3 (N.D. Ohio Sept. 10, 2013) (finding that reinstatement via "an order requiring … [defendant] to restore [plaintiff] to one of the positions to which she was entitled" constituted a request for specific performance under the relevant collective bargaining agreement and therefore supported removal on the basis of complete preemption under § 301). Simply put, reinstatement is unavailable under the "external regime of" Ohio law. *Paul*, 701 F.3d at 521. So if Anderson is entitled to it, it must be by virtue of the CBA. And that confirms that his defamation claim, at least to the extent that it seeks reinstatement, is actually a disguised CBA contract claim, and thus falls within § 301's scope.

Similarly, while Anderson is correct that "defendants fail to point to any provision in the CBA" authorizing reinstatement, that specific performance is not available under Ohio common law for his employment contract necessarily means Anderson's demand for relief in the form of specific performance implicitly asks the Court to enforce a right created by the CBA. *Gilson*, 2013 WL 5158695, at *3. To be sure, he may lose on his request if the CBA does not authorize reinstatement. But

19

that loss (if it happens) will turn on what the CBA says or doesn't say, not on the contents of Ohio law. Accordingly, Anderson's request for reinstatement "necessarily implicate[s] rights in the CBA," which raises the preemptive specter of § 301 and thereby justifies ABF's removal of this cause. *Id.*

That brings us to Anderson's last (and similarly mistaken) contention: he is entitled to specific performance because Ohio law allows for equitable remedies for defamation claims. That the Court can order injunctive relief to remedy Anderson's defamation claim under Ohio common law is not the equivalent of saying Ohio law authorizes the Court to order specific performance under a personal services contract—just because the two forms of relief are equitable does not mean they are equivalent. A court may be able to grant one form of equitable relief without being authorized to grant another. And as exhaustively explored above, specific performance is not authorized as a remedy for employment contracts under Ohio law, whether that remedy is sought in connection with an alleged breach of that contract, or in connection with alleged defamation. *Felch*, 200 N.E.2d at 354–55.

So, even assuming the Court's conclusion above—that it will need to interpret the CBA to resolve the essential issue whether Stein's letter is privileged against Anderson's defamation claim—would not permit removal here (it does), Anderson cannot avoid federal court by claiming reinstatement is authorized by Ohio law independent of the CBA. *Paul*, 701 F.3d at 520–21. The only manner in which Anderson would be entitled to reinstatement is by proof that ABF was obligated to afford that remedy under the CBA.

Simply put, ABF has shown that resolution of the defamation claim requires the Court to interpret the CBA and to provide relief by enforcing rights established by the CBA itself. Anderson's arguments to the contrary fail to persuade. Because Anderson's tort claim is therefore an artfully disguised CBA contract claim under § 301 of the LMRA, removal based on complete preemption was proper.

Accordingly, the Court **DENIES** Anderson's Motion to Remand (Doc. 10).

## B. Motion for an Extension of Time to Serve

Next turn to Anderson's motion for an extension of time to serve Stein. Normally, good cause will permit a Court to excuse a failure to effect timely service on a defendant within the 90-day period prescribed by Federal Rule of Civil Procedure 4(m). *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568–69 (6th Cir. 2022). But the Court concludes that no such extension is needed here. True, on the current record, it appears that Stein has not yet been served. But Stein has nonetheless entered an appearance to file an answer and to move for judgment on the pleadings. (Docs. 24–26). And while Stein purported to reserve an insufficient service defense in his answer (Doc. 26, #660), he moved to dismiss the claim *on the merits* without referring to Anderson's failure to effect timely service on him. (Doc. 25, #653 (adopting Doc. 9, which argues that the cause must be dismissed because the alleged defamation is not actionable, Defendants were privileged in speaking, and the defamation claim is preempted by § 301)).

By seeking that relief, Stein impliedly waived any defense to Anderson's claim that he may otherwise have had on the basis of insufficient service. As the Sixth Circuit explained in an analogous context,

> although [the defendant] raised the defense[] of insufficient service of process … in his answer, he immediately filed a motion for judgment on the pleadings in which the defense[] w[as] not included. The motion for judgment on the pleadings … necessarily sought a decision on the merits. [The defendant]'s motion was thus "inconsistent with the idea that the district court lacked personal jurisdiction over the defendant[]." [*Gerber v. Riordan*, 649 F.3d 514, 525 (6th Cir. 2011) (Moore, J., concurring).] Indeed, [the defendant]'s actions demonstrate that he sought to have the district court use its power over the parties to reach a decision on the merits, and required the court to expend significant efforts in doing so. *See Parchman v. SLM Corp.*, 896 F.3d 728, 734 [(6th Cir. 2018)] ("[T]he voluntary use of certain district court procedures serve[s] as constructive consent to the personal jurisdiction of the district court … ." (alterations in original) (quoting *Gerber*, 649 F.3d at 519)). Such voluntary participation in the litigation gave [the plaintiff] "a reasonable expectation that [the defendant would] defend the suit on the merits." *King* [*v. Taylor*], 694 F.3d [650,] 660–61 [(6th Cir. 2012)] (quoting *Gerber*, 649 F.3d at 519).

*Boulger v. Woods*, 917 F.3d 471, 477–78 (6th Cir. 2019) (concluding that the district court properly exercised its discretion in holding that the defendant's litigation behavior had waived his insufficient process defense). Just so here. Stein's moving for the Court to resolve this case on the merits waived his insufficient service-of-process defense by evincing his intention to "defend the suit on the merits." *Id.*

And as Stein has waived this defense, he has knowingly and voluntarily submitted to the jurisdiction of the Court for its adjudication of Anderson's claim against him. Thus, Anderson's motion is moot as he does not need an extension of time to serve Stein—Stein voluntarily joined this suit, and the Court may properly

exercise personal jurisdiction over him. Accordingly, the Court **DENIES AS MOOT**
Anderson's Motion to Extend Time for Service (Doc. 17).

## C.  Defendants' Motions for Judgment on the Pleadings

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure
12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6)."
*Hollis v. Erdos*, 480 F. Supp. 3d 823, 828 (S.D. Ohio 2020) (citing *Tucker v.
Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)). Under that
standard, "a complaint must contain sufficient factual matter, accepted as true, to
state a claim to relief that is plausible on its face." *Bullington v. Bedford Cnty.*, 905
F.3d 467, 469 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))
(cleaned up). In making that determination, the Court must "construe the []
complaint in the light most favorable to the[] [Plaintiff], and accept the complaint's
allegations as true, drawing all reasonable inferences in favor of the Plaintiff[]." *Coley
v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015).

Unlike a court's review of a motion to remand, when a court analyzes a motion
for judgment on the pleadings, it generally must confine its review to the pleadings.
*CFPB v. Fifth Third Bank, N.A.*, No. 1:21-cv-262, 2023 WL 7325956, at *3 (S.D. Ohio
Sept. 26, 2023). That said, "when a document is referred to in the pleadings and is
integral to the claims, it may be considered without converting a motion to dismiss
into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d
327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). These "written instrument[s] [are]
[] record[s] falling within a narrowly defined class of legally significant documents

'on which a party's action or defense is based.'" *Fifth Third*, 2023 WL 7325956, at *3 (quoting *Copeland v. Aerisyn, LLC*, No. 1:10-cv-78, 2011 WL 2181497, at *1 (E.D. Tenn. June 3, 2011)). As a result, they "often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.*

Applying these rules here reveals that although a motion for judgment on the pleadings will normally require a more focused analysis that ignores some materials that can properly be considered for a motion to remand, there is complete parity in the Court's analysis of both types of motions here. Because Stein's letter is expressly referenced in the Complaint and is integral to his claim against both Defendants— the letter, after all, is the alleged actionable defamation itself—it is procedurally considered fully incorporated as part of the pleadings even though it is not attached as an exhibit. *Composite Techs., LLC v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873–74 (S.D. Ohio 2013); *see supra* note 3. In light of this legal fiction, the Court's review of Stein's letter is not meaningfully different from a review of the Complaint itself. Hence, such documents are properly before the Court on Defendants' motions for judgment on the pleadings without the need to convert them into ones for summary judgment. *Com. Money Ctr.*, 508 F.3d at 335–36. And as the Court relied on only the terms of the letter and Anderson's well-pleaded allegations to reach its complete preemption holding, the legal analysis disposing of the motion to remand equally applies to disposing of the motions for judgment on the pleadings.

That Anderson's state-law claims are completely preempted, *see supra* Part A, compels the conclusion that Defendants are entitled to judgment on the pleadings.

Namely, because § 301 of the LMRA completely preempts Anderson's state-law claims, that same statute also necessarily (ordinarily) preempts them as well, which means they must be dismissed. *Adamo Demolition Co. v. Int'l Union of Operating Engineers Loc. 150, AFL-CIO*, 3 F.4th 866, 874–75 (6th Cir. 2021) (affirming the district court's dismissal of the plaintiff's state-law tortious interference claims as preempted by § 301 of the LMRA based on its determination that those claims were *completely* preempted by § 301, which had also supported the defendant's removal of the action). So dismissal of Anderson's Complaint and action is warranted.

Again, Anderson objects. But he raises largely the same arguments against the motions for judgment on the pleadings that he did to advocate for the motion to remand: that (1) *his reading* of Article 46 of the CBA would not authorize Stein to write the letter or to disseminate it to Hampton, (2) privilege is an affirmative defense and so whether the allegedly defamatory statement was permitted by the CBA is not implicated without additional factual discovery, and (3) his requested relief for reinstatement is permissible under Ohio law. (Doc. 30, #677, 679–80, 684–89). As the Court already rejected these arguments above, it adopts in full its prior explanations for why Anderson's contentions lack merit.

And while Anderson raises aspects of the merits of his claim that he contends warrant further fact discovery to assess the relative validity of the parties' narrative, (*Id.* at #677–78, 680–83), those factual questions are moot given the claim is completely preempted by § 301. Put differently, the facts as pleaded in the Complaint, which reference the actionable defamation at issue—Stein's letter—demonstrate that

adjudication of this state-law claim is inextricably intertwined with the proper interpretation of the CBA. Any factual development that would incline the Court to agree with one side or the other about whether Stein defamed Anderson does not change that legal conclusion. Either way, the Court would need to interpret and to apply the CBA, which reaffirms its holding above that Anderson's defamation claim is both completely and ordinarily preempted by § 301 of the LMRA.

Simply, Defendants are entitled to judgment on the pleadings and a dismissal of this action as preempted by § 301. Accordingly, the Court **GRANTS** Defendants' Motions for Judgment on the Pleadings (Docs. 9, 25). But, because Anderson could perhaps successfully replead the claims under § 301, the Court will dismiss the action without prejudice.

## CONCLUSION

Altogether, for the reasons stated above, this nominally labeled state-law cause was properly removed to this Court, Stein has impliedly waived any objection to insufficient service of process, and Defendants have shown that they are entitled to judgment as a matter of law based on the well-pleaded allegations and Stein's letter, which is incorporated by reference in the Complaint. Accordingly, the Court **DENIES** Anderson's Motion to Remand (Doc. 10). The Court also **DENIES AS MOOT** Anderson's Motion to Extend Time for Service (Doc. 17). And the Court **GRANTS** Defendants' Motions for Judgment on the Pleadings (Docs. 9, 25). So the Court **DISMISSES WITHOUT PREJUDICE** Anderson's action.

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

      **SO ORDERED.**

January 4, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**